In re Paul A. CARLSON, a/k/a Paul Carlson, and Marsha J. Carlson, a/k/a Marsha Carlson, d/b/a Marsha's Office Products, & as surety for K-Sur-Rah, Inc., Debtors.

Richard GREENE and Randy Greene, Plaintiffs,

v.

Paul A. CARLSON, aka Paul Carlson, and Marsha J. Carlson aka Marsha Carlson, Defendants.

Bankruptcy No. 3–81–01558.
Adv. No. 81–0298.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

May 18, 1982.

Guy T. Ludvigson of Maki Ludvigson, Osceola, Wis., for plaintiffs.

Barry L. Blomquist, North Branch, Minn., for defendants.

## FINDINGS OF FACT CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

JACOB DIM, Bankruptcy Judge.

The above entitled matter came on for trial on March 16, 1982 before the Honorable Jacob Dim, Bankruptcy Judge, on the complaint of the plaintiffs seeking a determination that a debt owed to plaintiffs by the defendants is nondischargeable.

Guy T. Ludvigson of Maki & Ludvigson appeared for the plaintiffs, Richard Greene and Randy Greene.

Barry L. Blomquist of Blomquist & De-Wan, North Branch, Minn., appeared for the defendant-debtors, Paul A. Carlson and Marsha J. Carlson.

Based on the evidence adduced at trial, the arguments of counsel, and all the papers and records herein, the Court makes the following:

## FINDINGS OF FACT

1. The plaintiffs and the defendants executed a purchase agreement on August 2,

1978 for the purchase by plaintiff of 20 acres of property legally described as:

The East 995 feet of that part of the Northeast Quarter of the Northeast Quarter of Section 34, Township 35 Range 20, Chisago County, Minnesota lying south of the North 442 feet thereof subject to County Road No. 70 along the east line. Subject to and including any other valid easements, restrictions and reservations.

2. The purchase price was $13,500.00. The plaintiffs paid $3,500.00 earnest money on August 5, 1978. The check was made out to the defendants and the Peoples State Bank of Cambridge (the "Bank") which had a mortgage on the property.

3. The plaintiffs paid another $5,000.00 to the defendants on August 17, 1978. The check was made payable to the defendants only at the request of the defendants. The final $5,000.00 was paid to the defendants on December 7, 1978.

4. After numerous requests by the defendants, Mrs. Greene picked up a warranty deed, dated April 27, 1979, from Mrs. Carlson on May 10, 1979. The deed warranted good and clear title free of encumbrances

5. On July 31, 1978, the defendants were sent a letter by the Bank which informed them they were eight months delinquent on the mortgage and demanding immediate action. On August 8, 1978, the defendants paid to the Bank the check of $3,500.00 they received from the plaintiffs.

6. No other payments were received by the Bank. The other two checks paid by the plaintiffs were negotiated at a different bank, apparently to avoid seizure by the Bank.

7. On April 7, 1978, the defendants were served with a notice of foreclosure sale. The notice stated that the property would be sold at public auction on May 17, 1979.

8. On May 21, 1979, the plaintiffs were sent a letter by the attorneys for the Bank, informing them that the Bank had foreclosed and the period of redemption ran one year from May 17, 1979. This was the first time the plaintiffs learned of the mortgage foreclosure.

9. When the purchase agreement was signed on August 2, 1978, the defendants told the plaintiffs that there was a mortgage on the property. They said they would satisfy the mortgage with the $3,500.00 earnest money.

10. The defendants were told by the Bank that the Bank would release the property from mortgage upon payment of the sales proceeds. The defendants knew this but did not pay the proceeds to the Bank.

11. The defendants never told the plaintiffs that the mortgage was not satisfied or that the mortgage was being foreclosed.

12. In order to clear title, the plaintiffs had to pay $10,000.00 to the Bank and $219.93 to Chisago County for back taxes.

## CONCLUSIONS OF LAW

1. 11 U.S.C. § 523(a)(2)(A) excepts from discharge a debt incurred by "false pretenses, a false representation, or actual fraud." In order to establish fraud, the plaintiffs must show a material misrepresentation by the defendants with the intent that the plaintiffs rely thereon and the plaintiffs reasonably do rely on the misrepresentation to their detriment.

2. The defendants misrepresented material facts throughout their transaction with the plaintiffs. The defendants misrepresented what was needed to satisfy the mortgage. They misrepresented by silence that the mortgage was satisfied. From August 17, 1978 through May, 1979, the defendants caused the plaintiffs to believe the mortgage had been satisfied when the defendants knew it was actually about to be foreclosed.

3. The plaintiffs reasonably relied on the misrepresentations of the defendants. The defendants intended the plaintiffs to rely on the misrepresentation so that the plaintiffs would pay the remaining $10,000.00. There was nothing to indicate to the plaintiffs that the mortgage remained unsatisfied.

4. Because of the misrepresentation of the defendants, the plaintiffs were forced to pay an additional $10,219.93.

5. The debt owed by the defendant to the plaintiff as a result of the failure to clear title was incurred by a false representation and fraud. Pursuant to 11 U.S.C. § 523(a)(2)(A), the debt is nondischargeable.

NOW THEREFORE, IT IS ORDERED and ADJUDGED that the defendants, Paul A. Carlson and Marsha J. Carlson, shall pay to the plaintiffs, Richard Greene and Randy Greene the sum of $10,219.93, together with interest from this date forward and costs as assessed by the Clerk of Court upon application. This debt and judgment is nondischargeable.

LET JUDGMENT BE ENTERED ACCORDINGLY.